Case number two today is Michael Shreffler v. City of Kankakee. We'll hear from the appellant. Mr. Herbert. Yes. Good morning sir. Good morning Your Honors. May it please the court, counsel. My name is Dan Herbert and I represent Michael Shreffler in this case. Respectfully I would ask for a five-minute rebuttal in this case. To begin I want to give a very short resuscitation of the facts and the timing and obviously if Your Honors have any questions about the facts I'm certainly willing to offer but I think it's very important in this case the timing of some of these issues. In 2009 Mr. Shreffler was hired by the Kankakee Police Department and served with honor and distinction and it's undisputed that everyone considered him an excellent employee. In 2016, in February of 2016, Michael Shreffler made some comments on a Facebook post that were about a halftime show of the Super Bowl involving Beyonce and the comments were in poor taste but they were not overtly racist in any way. Anyways, the issue was brought to his chief. His chief gave him a written reprimand. Shortly after that Michael Shreffler found out that that his supervisor, then-Lieutenant Hunt, had made some posts on his Facebook page which were extremely disparaging posts racially which showed an animus toward white people and that's been admitted by some of the defendants here. One of, or I'm sorry, Mr. Austin who was a commander with the police department characterized them as ideally ideology of white supremacy. So... Both of those, both Dumas and Shreffler were reprimanded for their comments and that was a different supervisor? That's correct. Okay. That's important about that is then-Lieutenant Hunt believed that Michael Shreffler was a person that essentially outed him about the Facebook posts and he had made comments to other employees that he was going to find out who did this and he was going to get that person. So what happens is... Mr. Herbert, if I could ask you a couple of questions. Currently, is there some sort of arbitration that is taking place? That's a good question, Your Honor. There is. I know that there is discussions about an arbitration. Last I heard, that was probably about six months ago where they were talking about settlement and to my knowledge, and I'm sure counsel could speak to it better than me, but I know that there has not been an arbitration procedure. So an arbitration proceeding hasn't been formally initiated. Well, let's start from the end. Has there been an arbitration hearing scheduled? To my knowledge, there has not, Your Honor. Last I heard was six months ago and they were still up in the air, but to that point, and that's an important point, Your Honor, this arbitration issue is kind of a red hearing in this case. The fact here is that there was a choice that was made and the choice was made by the village to proceed via the Board and Police Commission for disciplinary hearing. They didn't choose to go through arbitration. But as I understand it, the CBA has post-termination proceeding provisions that would allow, I don't know whether allow is the right word or mandate is the right word, but that would certainly permit an aggrieved former employee to seek arbitration through the CBA with the aid of the union. Is that correct? There is a provision in there and I believe that it's either or, either a grievance or a hearing for the Board. Can I also direct your attention to page 52 of the red brief? The bottom of page 52, it's represented in this brief that since the district court's judgment was entered, I'm reading, plaintiff decided to avail himself to the grievance arbitration provided by the CBA. The parties submitted to a binding arbitration on February 22, 2023 and February 23, 2023 and are scheduled to submit closing arguments in writing to the arbitrator by May 1, 2023, just two weeks ago. So either you're saying that this is happening without your knowledge or that it's mistaken or something. I'm having trouble coordinating what you're saying with what this representation is. Your Honor, I agree. I apologize. I'm not involved in these arbitration proceedings and like I said, my last knowledge of the issue was that at six nothing pending. Apparently there was an arbitration but if I can go back to my point, that really it's irrelevant to the proceedings here because not only did the village choose to, they didn't offer him arbitration. It wasn't available. It was his right under the CBA. I'm not sure it's irrelevant because for purposes of federal due process concerns, it doesn't really matter which vehicle of state law or other provisions, perhaps a contract, is being used. It looks as though he's being given a full opportunity to be heard, to address whatever accusations were being made against him, to give his side of things. I mean the normal points that you would expect in a due process proceeding. But I would submit that this is all after the fact. It's all after he was terminated. It's after we filed the lawsuit. Okay. And so I actually looked at this record very carefully from the point of view I think you're now alluding to. Who told him what before the fact? Was he given notice of what things he may have, in somebody's view, done wrong? Was he given a chance to say something? And in informal ways he was. And so in formal processes, pre-deprivation followed by a full-blown formal process post-deprivation under cases like Loudermill is acceptable. But he wasn't provided his rights and that's been, it's really undisputed because Chief Hunt, Lieutenant Kidwell, Commander Austin, even Commander, I'm sorry, Chief Dumas, they have admitted that he did not receive his due process rights. He didn't receive certain rights and privileges that local law would have given him or that the CBA would have given him. And I'm just trying to look at this from the point of view of federal due process because it doesn't necessarily map right on to every detail of local law. Well to the federal question, he certainly has a right to be, to answer specific allegations made against him. He was never provided notice of allegations. Certainly not noticed to the level. What about when he was given the last chance agreement and he's, you know, he has meetings with people at which he's told, you know, at the training session there's word that certain things happened and it's informal. I don't have any doubt that, you know, he's not brought before a formal looking room with a table and everybody sitting down. But it seems that he is told what what he's done that people are concerned about. Well he, it was much less clear than respectfully what the defendants submit this. The was disciplined and he was fired for allegedly posting information on a Facebook account not related to the incident in the February 2016 Super Bowl. But I thought he was fired because of the, after the investigation of what took place during the active shooter drill. He was, Your Honor, but what we're saying is that that was a made-up reason. It was pretext and there's evidence in the Is there any evidence that the Commission knew about the Facebook post? I didn't see. Well all I can say is that there was a conversation between Dumas and the the Hearing Commission about the charges that were never brought and I don't know what informal discussions were took place. But here my question or answer to that, Your Honor, is it was very well known within this county. These Facebook posts created a lot of dissension in the police department and in the village in general. So to, certainly one of the one of the commissioners, whose name escapes me right now, he admitted that he knew about these Facebook posts because the Facebook posts were were critical of the black administration within the police department and it alleged corruption and it alleged it alleged racial disparity in hiring and promotions and my point is in the plaintiff's point is that's the reason he was fired. So Mr. Dumas was deposed. He was. Yes. And so presumably he was asked what he what sort of circumstances that led to the termination and as part of that deposition was there any facts uncovered that Mr. Dumas had told the commissioners look you know one of the reasons should be the fact that there were these February 2016 Facebook posts or 2018. There was no admission to that point but I would suggest that there are certainly inferences that that that's what that it occurred. We know that when they brought the charge which resulted in termination the charge included information that shouldn't have been included in the charge. Namely, discipline that was beyond a certain scope so it shouldn't have been in the in the record. So they so they referring for example to the reference to the two-day suspension of March 5, 2018? Yes. And to your point your honor and I believe that there was information yes there was information about his Mr. Schreffler's background and that included he had previously just a few weeks prior been given a five-day suspension for these 2018 Facebook posts. That information I'm almost positive judge and I can certainly find out your honors but that was included in the charging docs that went to the Commission. Now that's what the record seems to indicate that the charge that Dumas sends to the to the Board of Commissioners begins by saying this termination recommendation is based on several incidents and then goes on to indicate what they were the racially charged language towards the chief threatening to kill him, name-calling, progressive disciplinary actions, written reprimand, several written reprimands, February 10, 2016, December 21, 2017, March 5, 2018. So so the board is told by Dumas of all of these things. Yes and thank you your honor I appreciate that and that's an important point here. We know that at the very least even if we believe all the allegations about the the training incident where there was an alleged threat made which I'll get to that point that there's very significant questions of fact whether that even existed but at the very least the board considered this Facebook post from the from 2018 as part of the reason to terminate Mr. Schreffler. Mr. Schreffler cannot be disciplined for these posts. It's been admitted by by the defendants in this case that he posted as a private citizen and he posted about matters of public concern. I'm not sure those are full admissions actually. I mean that's something we would need to look at. I would say your honor that they admitted that police officers certainly have a First Amendment right to post. But as you well know there's a lot of nuance in that area of the law and you look at cases like Garcetti against Sabalos and you see that even things that look like they're a mixture of public concern and just good office discipline the Supreme Court has said public employers have to be able to function as normal employers and discipline people if they need to. Agreed your honor but I think there is an admission here from the from the defendants in this case that the Facebook posts certainly were not a basis to terminate him but also that that they were they were protected activity that they couldn't discipline them for. They gave him a five-day suspension. He appealed it. The mayor sat on the Grievance Commission which was unprecedented and they agreed to reduce that. Actually they agreed to get rid of it. Yes two and then the last chance agreement. Which he chose for unexplained reasons you don't have to tell me but he chose not to go that path. That's correct. So what the questions of facts here are is was he disciplined or I'm sorry was he terminated basically for the 2018 Facebook posts the fact that those posts are protected activity the defendants recognized they couldn't fire them I'm assuming that they spoke to their lawyers and the lawyers like he can't be terminated for this but he was disciplined for his First Amendment protected speech and I understand that's disputed but I certainly think that there's question of fact on that and I'm going to need to back up just a minute on the time that we have on the due process and so I want to give you an opportunity to address this before the other side comes up is the defendants reliance on the random and unauthorized exception is that foreclosed by our decision Bradley I'm sorry what exception did you say the defendants reliance on the random and unauthorized exception is that foreclosed by our decision in Bradley I don't believe it is your honor because in that case the facts were different in this case they were different in that this individual was a chief didn't have necessarily any contractual rights he was an at-will employee in in that case he did have a he had a pre-deprivation hearing with specific notice of charges he was able to present his side of the story in our case in the Bradley case there was no pre-deprivation process correct there was a there was no pre-deprivation process which in this case we we would submit that there was no pre-deprivation process and what what process there was was certainly inadequate and lacking and I see my time is up there's any other questions thank you thank you mr. active you good morning may it please the court Michael Atkins on behalf of defendants at police I'm here this morning to request that the court affirm the judgment of the district court granting summary judgment in their favor before I had some prepared remarks I wanted to address some of your questions before I is the grievance in arbitration process still open yes here's what happened and the dates mentioned in my brief I'm sorry I don't recall them off the top of my head the the Union and the city submitted evident your evident evidence to a panel of arbitrators I didn't represent the city in that matter does this begin with a formal request for arbitration I mean surely you've got to the request was made by the Union prior to filing suit it's in the record in this case that I want to say that was back in 2018 2019 when the Union requested the panel where the evidentiary gap was at the time of the summary judgment was well why did if that happened if the Union requested the answer in the record but the arbitrary but the dates you put in your brief the arbitration is moving forward at this point the evidence has been submitted closing statements were submitted by the parties I think on May 5th which I reviewed it's my understanding that the matters under advisement I don't think that there's gonna be any additional briefing I don't have any idea of what the timeline would be the panel's decision and what is the relief that the panel would be is being asked to provide the officer in this case my understanding is it would be to make him whole financially to the present date so it would be back pay any I guess any I'm not that familiar with the record any value of lost benefits I would assume and he's asking for reinstatement so I would like if the parties could do this to have a status report about the arbitration when maybe within a certain number of days do you think I think yes I think that to within certain number of days of the issuance of a decision certainly like the parties to file a joint notice with the court within five days of receiving any sort of order from the arbitration panel certainly certainly was there any other questions on that no okay thank you what is your view of the record as to what was what was before the Commission with regard to the Facebook posts as it was considering whether or not it should determination should go forward there's nothing in the record that shows that the commissioners were aware of the posts or the content of the posts in the notice that the the Commission there was a statement in there about I think the prior two-day discipline for a prior incident but that it didn't describe the speech didn't describe it doesn't seem to say anything about what this the sum and substance of the alleged free speech was not described there's no evidence in the record that the Commission had any knowledge of that I think counsel mentioned something today that the committee a commissioner admitted that he knew something about the Facebook post I if that's in the record counsel certainly didn't put it forward in his opposition to summary judgment in the district court and as we sit here to stand here today I'm not aware of where that might be buried in the record the commissioners were never deposed if you don't mind can we circle back to the arbitration again yeah sure picking up where we are where I left off in regards to the Bradley case sure and so I'm interested to know what pre-deprivation process was provided to mr. Scheffler sure and I will the district court noticed noted it specifically and random and unauthorized route and I guess that's my question right does Bradley foreclose that argument I don't think here a city that and so Bradley outlines the when it's a city and what due process is required before we go down this random and authorized act and so what pre-deprivation process was the district court which I agree with was based on the factual submissions that that we submitted for the summary judgment was that plaintiff was read a notice of the charges against him at an April 18th 2018 interview this was the investigative interview with investigator Bartlett to look into the allegations so they're required to give notice in a hearing and so is it the suggestion that that qualified as the hearing there's there's more I wasn't finished okay so he was he was given the notice of what the charges were at the interview he was represented by counsel at that interview he was allowed to give his side of the story I'm really listening for where there was a hearing there was no formal pre-deprivation hearing there was minimal pre-deprivation due process in the form of plaintiff given being given the opportunity at an interview and meetings with the the chief to respond to the allegations that were made against him which he was made aware of when he sat down for the interview with inspector Bartlett he presented counsel and a union rep with him I'm sorry he had both counsel and a union rep with him is that right you said counsel a minute ago he was represented by a union attorney and a by union representative so it's my position that if pre-deprivation due process is required under Bradley which I'm not entirely sure that it is in this case that that would be sufficient pre-deprivation process and that is what we argued on the summary judgment the district court didn't rule that way there's frankly there's not much in my brief about it because I didn't observe counsel making that argument before the court one other thing I wanted to touch on briefly is on this issue of an admission does the amount of post deprivation process matter if we're not able to get over the pre-deprivation hurdle after Bradley I'm sorry can you say that one more time yeah does the amount of post deprivation process talking about where we are as far as the arbitration and those things are offered by the state does it matter if the pre-deprivation hurdle is not crossed it would certainly limit the scope I think plaintiff's due process claim and and his remedies I'm not necessarily certain that it would so I guess what you're asking is under Bradley if there's sufficient post termination but quote-unquote insufficient pre termination yeah I I don't I don't I think under Bradley then it would limit the scope of the claimant but maybe not necessarily be dispositive of it I think there's a lot of law about the interrelationship between pre and post deprivation and what your opponents say we're pre deprivation procedures are both required and practicable then if you don't give them you you may be in trouble you may you may have a due process problem but the degree of formality and the you know it doesn't necessarily always have to be a full-blown trial proceeding that's basically a Matthews against Eldridge point correct and there was a there was a case that I cited before the district court again I didn't cite it here because I didn't read plaintiff's brief is making this argument there was a case I cited it'll be in the appendix in the record on that point I judge what I think it was one of your opinions but I can't recall the name of it concerning the allegation that the defendants have admitted that the speech at issue here was protected by the First Amendment there's I'm not sure where this is coming from this alleged admission in the in the brief plaintiff points to essentially the part of the record where I raised the the Mount Healthy affirmative defense to the First Amendment claim it's clear from the plaintiff speech was protected under the First Amendment and you know notified the plaintiffs that that was something that he was gonna have to carry his burden of proof on in order to survive summary judgment this struck me is a very underdeveloped point actually there's a lot of law in this area much of which was not discussed on which point the matter of public concern issue in the context of a police department in you know the Supreme Court's been very careful to follow context for this and I just found it underdeveloped in the briefs I'll say well I would say that we submit that the district court's analysis was thorough and correct that primarily relying on the Clark versus that the district court thought these statements were made for purely personal reasons but surely they were both right I think there's a police department is you know a daily issue in some places I think there's evidence in the record that they were made for purely personal reasons specifically a plaintiff's deposition when I asked him why he made these statements the way he did he said frustration there was no indication that he was intending to air any public issue or foster you can see from the content again when you look at the context of his frustration with the ongoing grievance process he was in for another discipline that's in the record about when he was disciplined for missing a gun but that seems like a disputed issue right so I mean we're here at summary judgment summary judgment granted for the defendants and so to the extent that we have to draw you know view the facts in anyone's favor it's a it's a plaintiff's favor and so you're saying that he you know the real reason he posted the Facebook post was personal he said he and the more kind of broad subtopic matter than just his own personal grievances with the police department so isn't that a disputed issue I don't think and I think the case law is clear that the topic in general is not dispositive issues so certainly the topic of public corruption or maladministration of a city is certainly a topic of public interest I think when you combine the personal motive the ongoing grievance and it might may be disputed who was right or who was wrong and resolving that grievance but there's on this it's undisputed that there was a dispute about it that the plaintiff was displeased with and that's what what was motivating him to motivating him in his frustration to you know call the administration you know you know what and and you know say corruption that that that weird so I think when you look at that context or that content along with the context of the grievance and the sorry I lost my train of thought the frustration you're looking content and forum to determine if we have a matter of public concern under conic so I think the district court was correct in finding that plaintiff didn't make that reach that bar in this case and I think importantly plaintiffs waived that argument by not really presenting much if at all on that or the issue of Pickering balancing to the district court frankly plaintiff doesn't put much forward for this court on Pickering balancing I think he only addressed one or two of the factors as some he conceded one in our favor others he didn't address at all one factor he claims tips in his favor was that well there's no there's no evidence or indication that this inhibited the plaintiff's ability to speech inhibited the plaintiff's ability to do his job but I'll stop unless you want me to finish my sentence you can go ahead and finish your I was just I was gonna say that at that point that the plaintiff raises there the courts noted prior in the Lulowsky versus displays case that part of a police officer's job is to foster goodwill towards the police department and in light of the comments that plaintiff lobbed out there on Facebook I think this clearly interfered with his ability to stand out in the street and represent the city that way thank you mr. actor thank you mr. Herbert I'll give you a couple of minutes of rebuttal what's important to remember here is what we're looking at in this is the context of a a granting of summary judgment these issues the the intent of the defendants whether or not they had a discriminatory animus those are questions for jury can I nail down one other point you started out with some official capacity claims and they're they're out of the case at this point right you're not really contesting that here the official capacity right well we did but we did contest those because chief Dumas clearly violated a need to relate this to the city basically you need to satisfy Monell standards well I think what we need to do your honors is obviously a government employees entitled to to qualified immunity for acts within the scope but they're not allowed to that would be an individual capacity case for qualified immunity an official capacity case is the same as actually suing the city okay I don't believe we've waived those your honor but I understand the point that you're making this issue about a we talked a lot about the due process claims and and obviously that's a big part of it it resulted in the the biggest damage to the plaintiff but there's also other claims that we clearly show that that my client was discriminated against retaliated against and it was based partially on race there is ample evidence in the record that wasn't reviewed by the district court in this case it's undisputed that there was 67 additional facts that were not considered by the district court in this case he explained why he did in in I would acknowledge that that we probably did not do a great job fleshing out the argument but you know your honor is your honors no we are we were responding to a summary judgment and the burden really was shifted in this case improperly and with all due respect in district court the defendant had the responsibility to prove that there was no genuine issues of material facts we certainly could have remained silent without answering anything we believe that we should have survived summary judgment in this case but we did present substantial evidence of a racial animus of the decision-makers and in we their suspicious timing certainly and suspicious facts relating to the termination and these are issues that only a jury can determine the defendants say it was lawful we say it was it was not lawful a jury has to make that credibility determination thank you Mr. Herbert thank you I will take the case under advisement